JONES, Judge.
Pittman and Roberts are Bossier City dentists whose business deals prompted this litigation. Before their business deals arose, Dr. Pittman had loaned $6,300 to a Shreveport dentist who died while the debt was still owed.
Dr. Pittman obtained the patients’ records of the deceased Shreveport dentist and gave them to the younger Dr. Roberts, who was to attempt to professionally serve these patients. The principal dispute between Roberts and Pittman concerns their agreement as to how much and in what manner Roberts was to pay for the patients’ records and the benefits he would derive from the records.
Pittman sued on a promissory note dated in 1972 for $6,300 plus interest and attorney fees. He contends Roberts executed the note for the amount that had been owed by the deceased Shreveport dentist in return for the patients’ records.
Roberts contends that the note was evidence of only a contingent debt because the true agreement was that he agreed to pay Pittman 20 percent of the amount Roberts grossed from the patients whose records were given him by Pittman, up to the maximum amount of $6,300. Roberts further contends that the transaction was consummated in 1973 and not in 1972, and that he did not agree to pay, and that the note did not provide for any interest or attorney fees. Roberts alleged and established that 20 percent of the funds collected from his professional services in accord with the agreement amounted to $3,317.60 and admitted this was owed to Pittman.
Roberts reconvened against Pittman for $1,100 which he had given Pittman in another business deal. Roberts and others were interested in a particular property in Bossier City which was desirably located. Pittman suggested he was more favorably connected with the owner of the property to negotiate for and obtain an option to purchase. Roberts obtained $1,100 and gave it to Pittman to purchase the option as undisclosed agent for Pittman and another. Pittman acquired the option and, according to Roberts, would not and did not convey it to Roberts so that the option could be timely exercised.
The trial court expressly noted the evasiveness and contradiction in Pittman’s testimony and the corroboration by other evidence and witnesses of Roberts’ testimony. The trial court resolved all of the credibility issues in Roberts’ favor and against Pittman and awarded judgment for Pittman for $3,317.60, plus legal interest from judicial demand (which Roberts admitted owing); otherwise rejected Pittman’s demands for interest and attorney fees as the note provided, and awarded Roberts as plaintiff in reconvention, judgment for $1,100 against Pittman with legal interest from judicial demand. Pittman appeals. We affirm.
THE MAIN DEMAND
Plaintiff contends, on appeal, that Roberts was in fact presenting an affirmative defense to his suit on the note which was not properly set forth in the pleadings. The trial court specifically found that the pleadings were broad enough to permit proof of the note defense made by defendant. There is no error in the ruling of the trial court.
The purpose of the Code of Civil Procedure Article 1005 is to prevent surprise by giving plaintiff fair notice of the nature of the defense, thereby preventing interjection of unexpected issues. Bank of Coushatta v. Evans, 313 So.2d 644 (La.App. 2d Cir. 1975); Scott v. Behrman, 273 So.2d 661 (La.App. 4th Cir. 1973); Bates v. Stewart, 262 So.2d 591 (La.App. 3d Cir. 1972).
In paragraph 1 of defendant’s answer he admits his name and domicile as *543 alleged in paragraph 1 of plaintiff’s petition but denies all of the remaining allegations thereof. Defendant further answers in the following manner:
“Further answering this allegation, respondent shows that he did sign an instrument presented to him by plaintiff but denies that it was on the date shown. In addition, respondent had no intention of this instrument being a promissory note and there was no agreement for respondent to pay interest or attorney’s fees. Respondent shows that another dentist, Dr. John Grogan, died owing plaintiff $6,300.00 and his succession was insolvent. Plaintiff took Dr. Grogan’s dental records since payment could not be made on his debt. Plaintiff and respondent agreed that since respondent had previously worked for Dr. Grogan that perhaps he could see some of Dr. Gro-gan’s patients and respondent would pay plaintiff 20% of the gross amount he received from these patients up to $6,300.00. The instrument signed by respondent was only for the purpose of showing the maximum amount respondent might be called upon to pay plaintiff. As of January 1, 1975 20% of the accounts from former patients of Dr. Grogan amounted to $3,317.60. Respondent has offered to pay this sum to plaintiff less amounts plaintiff owed respondent and he has offered to pay plaintiff 20% of the amounts he continues to receive from these accounts up to the $6,300.00 in accordance with their agreement. Plaintiff has refused this payment.”
It cannot be contended that plaintiff was not adequately apprised of the defense to be presented by defendant and the issues that would arise as a result of that defense.
Nor can we agree with plaintiff’s contention that parol evidence was improperly admitted to vary the terms of the promissory note. The trial court concluded, as noted in his written reasons for judgment, that “the writing is only a part of the entire oral contract between the parties.” In the case of Gulf States Finance Corporation v. Airline Auto Sales, Inc., 248 La. 591, 181 So.2d 36 (1965), the Louisiana Supreme Court noted the following rule with respect to parol evidence:
“ ‘ * * * Many of the exceptions to the parol evidence rule are quite as well settled as the general rule and require only a mere statement. It may not be contended for example, that, as between the parties to an instrument parol evidence is incompetent to show fraud, mistake, illegality, want or failure of consideration, to explain an ambiguity when such explanation is not inconsistent with the written terms, or to show that the writing is only a part of an entire oral contract between the parties.’ 3 R.C.L. 869, Sections 52 and 53 . . . ” (Emphasis supplied by the court). Id. at 181 So.2d page 38
Just as the note in Gulf States Finance Corporation, supra, did not purport to integrate or embody in full all of the agreements of the parties at the time it was made and delivered, the note executed by Roberts did not constitute the entire agreement between Roberts and Pittman and, therefore, does not preclude proof of the real terms of that agreement.
We cannot agree with the plaintiff’s contention that defendant did not sustain his burden of proof of the agreement actually existing between the parties. The trial court’s written reasons for judgment clearly reflect his evaluations of the credibility of the various witnesses presented by the parties. There is ample support in the record for the trial court's findings of fact and we conclude that the lower court’s reasonable evaluation of credibility and reasonable inference of fact should not be disturbed. See Canter v. Koehring, 283 So.2d 716 (La.1973).
The trial court was obviously impressed by Dr. Roberts’ testimony that such medical records are generally of very little value after having been inactive for several months. Dr. Pittman also testified that the overhead of a dentist approaches the sixty percent range. The trial court noted that twenty percent of the gross would amount to roughly half of the expected profit from *544 the medical records in question. We further note that there is no evidence that Pittman relinquished any rights to payment from the succession of the deceased creditor nor from the deceased creditor’s widow in connection with his arrangement to acquire the dental records which he delivered to Roberts. He vastly improved his chances of full payment by arranging the contingency plan with Roberts while at the same time maintaining the possibility of payment from the succession of his principal debtor, or his debtor’s widow, if the contingency plan failed. These facts — when considered with the insolvent condition of the succession and the very real possibility that, despite the assurances of the deceased’s wife, Pittman would not collect on his outstanding obligation — convinces us that the trial court did not err in its evaluation of the evidence.
The trial court found that the note was incomplete when Roberts signed it and that Pittman had no authority to complete the note with respect to interest and attorney’s fees. The Negotiable Instrument Law in effect the date the note was signed provides that a note which is filled in beyond the amount or terms authorized is valid only as to the terms authorized. See LSA — R.S. 7:14. Since Pittman was unauthorized to complete the note with respect to interest and attorney’s fees, those amounts are not recoverable by him.
THE RECONVENTIONAL DEMAND
Pittman contends that the evidence does not support a conclusion that Pittman refused to put the option in Roberts’ name and that Roberts failed to prove any damage. We find no merit in these contentions.
The trial court’s conclusion was based upon its evaluation of the evidence presented by the parties with respect to the circumstances surrounding the purchase of the option by Dr. Pittman. The trial judge stated in his written reasons for judgment:
“We are convinced well beyond a preponderance of the evidence that Dr. Roberts’ version of the events is the correct one.
“Dr. Pittman’s testimony in this regard was contradictory. At one point he stated that he had no use personally for the option; then later he conceded that he obtained two renewals of the option subsequent to the demise of its original term, which he received without additional consideration. He claims he was doing this for the convenience for another physician. Furthermore, he apparently obtained a title opinion on this property while he still enjoyed an extension on the option. At one point, he admitted that the title opinion was requested while the option was still in force and later on he stated that he does not recall when the title opinion was requested.
“The testimony of the co-partners of Dr. Roberts in the ill-fated option venture lend credence to his version. Additionally, Dr. Pittman’s evasiveness and contradictions on cross-examination lead us to discredit his testimony in this regard.”
After Pittman refused to transfer the option to Roberts and his partner, Joel Anderson, Roberts reimbursed Anderson for the $550 that Anderson had contributed toward the acquisition of the option. Although there may have been additional damages sustained by Roberts because of Pittman’s failure to fulfill his contractual duties with respect to the purchase and transfer of the option, Roberts seeks only return of the purchase price of the option. Since there was no possibility of his exercising any rights under the option, he certainly sustained a loss of at least the purchase price of the option. We, therefore, find that there is no merit in Pittman’s contention that Roberts failed to prove any damage.
For the foregoing reasons, the judgment of the lower court is affirmed at appellant’s costs.
Affirmed.